UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| John Wayne Shead, ) | Civil Action No.: 4:22-cv-04649-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB in June 2020 alleging inability to work since March 2020. (Tr. 15). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in April 2022 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 1, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-28). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in October 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in

this court in December 2022. (ECF No. 1).

**B.      Plaintiff's Background**

Plaintiff was born in June 1973 and was forty-six years old on the alleged onset date. (Tr. 26). Plaintiff had past relevant work experience as materials handler, sales clerk, and cable TV installer. (Tr. 26). Plaintiff alleges disability originally due to Goodpasture Syndrome. (Tr. 55). Pertinent medical records will be discussed under the relevant issue headings.

**C.      The ALJ's Decision**

In the decision of June 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 15-28):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.  The claimant has not engaged in substantial gainful activity since March 27, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: chronic kidney disease, hypertension, and affective disorder (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is further limited to: occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; and never climbing ladders, ropes, or scaffolds. The claimant can have occasional exposure to extreme heat and workplace hazards such as unprotected dangerous machinery or unprotected heights. The claimant can concentrate, persist, and maintain pace sufficient to understand, remember and carry out unskilled, routine tasks in a low stress work environment (defined as being free of fast-paced or team dependent production requirements), involving simple work-related decisions, occasional

|   |   |
|---|---|
|   | independent judgment skills and occasional workplace changes. |
| 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565). |
| 7. | The claimant was born on June 18, 1973 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).). |
| 8. | The claimant has a limited education (20 CFR 404.1564). |
| 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2020, through the date of this decision (20 CFR 404.1520(g)). |

## II. DISCUSSION

Plaintiff argues the ALJ erred in not finding gout as a severe impairment. Plaintiff argues the ALJ erred in evaluating the opinions of PA Thomas and Dr. Heegard. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

3

be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Gout**

Plaintiff argues the ALJ erred in not finding gout as a severe impairment. A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Plaintiff bears the burden of demonstrating that he has a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, "'[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (*quoting*

6

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). The severe impairment inquiry "is a de minimis screening device to dispose of groundless claims." *McCrea v. Comm'r*, 370 F.3d 357, 360 (3rd Cir. 2004) (citation omitted). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Plaintiff argues there was no explanation given by the ALJ as to gout. (ECF No. 14 at 1). Plaintiff's arguments focus on x-rays[3] and the diagnosis of gout. The ALJ gave several reasons supporting the non-severe finding. The ALJ noted Plaintiff's March 2020 hospital admission showed an elevated uric acid level, indicating gout, citing Exhibit 3F/70-114. (Tr. 18). The ALJ noted that Plaintiff refused prophylactic gout treatment in March 2020 despite the diagnosis. More than a year later, Plaintiff reported right knee pain, which was associated with the gout diagnosis, citing Exhibit 12F/8-15. In March 2022, it was noted Plaintiff's gout was stable with medication, citing Exhibit 12F/29. (Tr. 18). The ALJ noted that as to gout, care had been sporadic and with minimal history; the ALJ found gout as a nonsevere impairment. (Tr. 18). Exhibit 12F/29 noted gout was stable on medication. (Tr. 1259). Exhibit 12F/8-15 is an October 2021 visit noting three days of right knee pain and a history of gout. (Tr. 1238). Upon exam of right knee, there was swelling, tenderness, and erythema. (Tr. 1239). Labs and imaging were done. (Tr. 1240). Notation was "concern for septic

---

[3] Based on the exhibits cited by the ALJ in support, it is evident the ALJ considered the two sets of x-rays regarding knees in the record. An x-ray result or a diagnosis does not automatically convert to a functional limitation. *Moore v. Saul*, 2019 WL 3429122, at *6 (M.D.N.C. July 30, 2019), *report and recommendation adopted*, 2019 WL 7599896 (M.D.N.C. Sept. 13, 2019).

joint vs. gout." Lab results were elevated uric acid and gout was treated with two medications; Plaintiff had immediate improvement with these medications. (Tr. 1240, 1244).

The regulations do not require specific articulation about how an ALJ is to have considered non-severe impairments in the RFC.  20 C.F.R. § 404.1545; *Britt v. Saul*, 860 Fed. Appx. 256, 262 (4th Cir. 2021)(Case law and regulations do not explicitly require a specific analysis on non-severe impairments in the RFC; the ALJ's opinion must simply reflect the ALJ considered the non-severe impairment.)  A non-severe impairment by its nature did not cause more than a minimal limitation in ability to perform basic mental work activities. 20 C.F.R. § 404.1522(a).[4]

Substantial evidence supports the ALJ's assignment of gout as non-severe.

**Opinions**

Plaintiff argues the ALJ erred in evaluating the opinions of PA Thomas and Dr. Heegard. For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed.  *See* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017).  Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017).  The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a).  Instead, the ALJ should consider and articulate in the decision

---

[4] Reading the ALJ's opinion as a whole, the ALJ considered all of Plaintiff's impairments both severe and non-severe.  Plaintiff does not demonstrate that the ALJ's analysis was not supported by substantial evidence.  The ALJ sufficiently addressed Plaintiff's combined impairments under the *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989) standard and there is substantial evidence to support the ALJ's decision in this regard.

how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).[5]

PA Thomas

In January 2021, PA Thomas completed a short form regarding only exertional level demands. (Tr. 996). PA Thomas opined Plaintiff was incapable of full time work at a sedentary or a light level. (Tr. 996). Under the question of state the findings, results, or diagnosis that support the restrictions and limitations, PA Thomas only noted Goodpasture Syndrome. (Tr. 996). This is the extent of the opinion.

---

[5] Plaintiff cites *Dowling v. Comm'r*, 986 F.3d 377 (4th Cir. 2021); however, *Dowling* applied the former regulation, which is inapplicable here and inapplicable to applications after March 2017.

>The ALJ found PA Thomas' opinion unpersuasive:
>
>The file includes a form completed by Janie M. Thomas, PAC. (Exhibit 5F). Ms. Thomas broadly indicated the claimant could not perform light or sedentary exertion. (Exhibit 5F). In attempting to support this assessment, Ms. Thomas generally discussed the claimant's kidney disease. (Exhibit 5F). However, this opinion does not appear consistent with the evidence as a whole, which captures normal physical examination findings. (Exhibits 1F; 3F; 10F; 12F). In this respect, the opinion of Ms. Thomas has been found unpersuasive.

(Tr. 25). The ALJ's assessment of PA Thomas' very brief opinion as "broadly indicated" and "generally discussed" is accurate. As to the supportability factor, PA Thomas did not cite any evidence in the opinion to attempt to support the opinion besides a diagnosis. The ALJ then looked at the consistency 20 C.F.R. § 404.1520c factor and noted normal exams generally within Exhibits 1F, 3F, 10F, 12F.[6]

   Reviewing those exhibits, Exhibit 1F is 2019/2020 treatment records of Dr. Heegard. (Tr. 269). A June 2020 exam was normal, except for "2+ pitting edema." (Tr. 272). Plaintiff had no complaints, except for fatigue. "His face remains swollen."  (Tr. 271). A May 2020 exam was normal, except for edema. (Tr. 269). An April 2020 exam noted facial fullness. (Tr. 275).  In March 2020, an exam showed "2+ pitting edema" and normal gait. (Tr. 277). Plaintiff was given additional prescriptions and counseled on a low sodium diet. (Tr. 278). In January 2020, December 2019, and November 2019, Plaintiff examined with normal gait and with no edema. (Tr. 280, 283, 286).

   Exhibit 3F is 619 pages of notes from the Prisma Hospital system. (Tr. 338). A July 2020 exam by Dr. Goldsmith was normal in all categories. (Tr. 339). May 2020 and April 2020 exams by

---

[6] Although it is helpful, there is no requirement that an ALJ cite specific exhibit numbers in support of findings; an ALJ is to make clear to a subsequent reviewer that findings are supported by the evidence. *See Scott v. Comm'r,*  2014 WL 1340075, at *6 (D. Md. Apr. 2, 2014). The analysis by the ALJ here accomplishes that end even without specific page number citations.

Dr. Walls and Dr. Goldsmith were normal. (Tr. 341, 345, 350, 352). At an emergency room visit for blood in urine in mid-April 2020, exam was normal. (Tr. 357). Later, exam states ill-appearing, knee swelling, and edema. (Tr. 359, 365). "Recent joint aspiration was consistent with gout. Patient's joints are swollen, but not erythematous. Likely consistent with gout exacerbation." (Tr. 359). Other exams during hospital admission state generalized edema. (Tr. 388, 391). By April 15, 2020, there was no edema. (Tr. 398). In early April, Dr. Goldsmith noted a normal exam. (Tr. 402). On March 28, 2020, Plaintiff was admitted to the hospital. (Tr. 404). Swelling to left knee was noted on exam. (Tr. 407). Knee x-ray showed degenerative changes most commonly related to chronic arthropathy. (Tr. 410). Plaintiff was having an acute flare of Goodpasture Disease. (Tr. 414). It was a similar presentation as in December 2019. (Tr. 425). "Arthrocentesis performed [on left knee] revealed birefringent crystals consistent with gout." (Tr. 445). Plaintiff endorsed marked improvement in knee pain with steroids and did not want to start prophylactic treatment for gout because he did not have these gout flares very often. (Tr. 445). In January 2020, Plaintiff's exams by Dr. Goldsmith and PA Thomas were normal. (Tr. 452-453, 455, 458-459). In December 2019, Plaintiff was seen in the emergency room for elevated creatinine level. (Tr. 459). Plaintiff examined with edema. (Tr. 463-464). Later, Plaintiff examined with no edema. (Tr. 475, 486, 491). In October 2019, Plaintiff examined by PA Thomas with "3+ pitting edema." (Tr. 496). This was a sign of concern of kidney injury, which Plaintiff was eventually diagnosed with. (Tr. 497). In September 2019, Plaintiff had a normal exam. (Tr. 500).

Exhibit 10F is 2021 and 2022 notes from Dr. Heegard. In September 2021, Plaintiff examined with normal gait and "2+ pitting edema." (Tr. 1180). Plaintiff had been off of immunosuppressive medications for three months. In March 2022, edema had dissipated with

11

improvement of renal function. (Tr. 1183). Plaintiff had no complaints. (Tr. 1185). Exam was normal. (Tr. 1187). In December 2021, "he does not have any edema." (Tr. 1193). Exam was normal in all categories including normal gait.

Exhibit 12F is 2021 and 2022 records of PA Thomas. In October 2021, Plaintiff examined with right knee swelling, erythema, and tenderness. (Tr. 1239). Uric acid was elevated; gout was treated with medications and Plaintiff had immediate improvement. (Tr. 1240). In December 2021, January 2022, March 2022, and April 2022, Plaintiff had normal exams. (Tr. 1247, 1260, 1265, 1268).

While there are some abnormal exam findings in the record(mainly edema), the ALJ's evaluation of the 20 C.F.R. § 404.1520c consistency factor— as to an opinion that states Plaintiff cannot do even sedentary work— is supported by substantial evidence, where the record has exams of all normal gait and there is no treating opinion in the record of any functional limitation as to leg elevation in regard to the sporadic exams of edema.

Dr. Heegard

Dr. Heegard opined two sets of opinions. Dr. Heegard's first statement dated May 2020 stated:

> Mr. Shead has been diagnosed with anti-glomerular basement membrane disease. A kidney disease treated with medications that suppress the immune system. He is at high risk for complications of COVID-19 if he were exposed to the virus. Additionally, both the underlying disease and his immunosuppressive medications can cause weakness and fatigue, making physical exertion difficult and potentially dangerous. I have recommended to Mr. Shead that he should not return to work for the foreseeable future.

(Tr. 334). As to Dr. Heegard's first statement, the ALJ found:

> In this first statement, Dr. Heegard indicated that she had advised the claimant not to return to work due to immunosuppression due to his conditions in light of the risks

> presented by the COVID-19 pandemic as well as generalized fatigue. (Exhibit 2F). Notably, this statement is an opinion on the ultimate issue of disability, which is reserved to the Commissioner. Accordingly, this statement has been found unpersuasive.

(Tr. 25). As to Dr. Heegard's first opinion, the only reason given for the finding of unpersuasive was the statement was an opinion on an issue reserved for the Commissioner. The opinion had said Plaintiff should not return to work and did not give any functional opinion, just that physical exertion would be difficult and potentially dangerous. Pursuant to 20 C.F.R. § 404.1520b, the ALJ is not required to provide any analysis as to evidence that is inherently neither valuable nor persuasive. In that regulation, statements that you are not able to work is such inherently unpersuasive evidence. Substantial evidence supports the ALJ's findings as to Dr. Heegard's first statement.

In August 2021, Dr. Heegard completed an autoimmune disorder medical assessment form. (Tr. 1280-1283). Plaintiff received treatment every 6-8 weeks since November 2019. Plaintiff had antiglomerular basement membrane antibody disease. Plaintiff also had hypertension and anemia. Symptoms included edema and renal involvement. (Tr. 1280). The question as to positive clinical findings was left blank. (Tr. 1280). Dr. Heegard stated Plaintiff did not experience symptoms that would interfere with attention/concentration or be off task 15% of time. (Tr. 1281). Plaintiff was unable to perform fast paced tasks/production line, but Plaintiff could perform detailed tasks and have frequent interaction with others. (Tr. 1281). As to all questions about hours of ability to sit, stand, or walk, it was crossed out and marked not applicable; the same was done for lift/carry and leg elevation. (Tr. 1281-1282). The question as to absences was unanswered. (Tr. 1283). Under the question explain how diagnosis affects ability to work, Dr. Heegard opined: "Patient has been on high dose immunosuppressive medications that we are currently weaning. He may have fatigue and need frequent breaks from strenuous work." (Tr. 1283).

> As to Dr. Heegard's second set of opinions, the ALJ found:
>
> > In the second statement, Dr. Heegard checked a box indicating the claimant would be unable to perform fast paced tasks. (Exhibit 13F at 4). In supporting this statement, she otherwise indicated the claimant was being weaned off of immunosuppressive medications and that the claimant may have residual fatigue warranting frequent breaks from strenuous work. (Exhibit 13F at 6). Notably, this opinion appears inconsistent with the evidence which tends to reflect improved symptoms within twelve months of the initial onset. (Exhibits 1F; 3F; 10F; 12F). In this respect, the opinions of Dr. Heegard have been found unpersuasive.

(Tr. 25). As thoroughly discussed above, Exhibits 1F, 3F, 10F, and 12F, cited by the ALJ, reflect inconsistency with Dr. Heegard's opinion, showed many normal exams, showed some exams with just edema, and reflected over time Plaintiff's impairment went into remission and Plaintiff was no longer on immunosuppressive medications. To the extent Plaintiff again repeats the edema findings and insists on a need to elevate legs, Dr. Heegard did not opine Plaintiff required any elevation. To the extent Plaintiff argues Dr. Heegard's opinion was in regard to difficulty concentrating, Dr. Heegard stated Plaintiff did <u>not</u> experience symptoms that would interfere with attention/concentration or be off task 15% of time and Plaintiff could perform detailed tasks. (ECF No. 10 at 17);(Tr. 1281).

The ALJ supported finding the opinions of PA Thomas and Dr. Heegard as unpersuasive by reviewing the consistency and supportability factors of 20 C.F.R. § 404.1520c(b),(c), citing to treatment notes of exams during the relevant period that did not support the severity of the limitations opined. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of the opinions. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.  *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| October 31, 2023<br>Florence, South Carolina | s/ Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |